FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 12, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JAMIE M.,[1] | No. 1:18-cv-03203-MKD |
| Plaintiff, | |
| | ORDER DENYING PLAINTIFF'S |
| vs. | MOTION FOR SUMMARY |
| | JUDGMENT AND GRANTING |
| ANDREW M. SAUL, | DEFENDANT'S MOTION FOR |
| COMMISSIONER OF SOCIAL | SUMMARY JUDGMENT |
| SECURITY,[2] | |
| Defendant. | ECF Nos. 14, 15 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 14, 15. The parties consented to proceed before a magistrate judge. ECF No.

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names.

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet. *See* Fed. R. Civ. P. 25(d).

ORDER - 1

6. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion, ECF No. 14, and grants Defendant's motion, ECF No. 15.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

ORDER - 4

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to

other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On May 3, 2012, Plaintiff applied for Title XVI supplemental security income benefits alleging an amended disability onset date of October 1, 2011. Tr. 160-65. The application was denied initially, Tr. 92-100, and on reconsideration, Tr. 104-11. Plaintiff appeared before an administrative law judge (ALJ) on August 1, 2013. Tr. 29-59. On December 30, 2013, the ALJ denied Plaintiff's claim. Tr. 9-28. On appeal, this Court remanded the case to the Social Security Administration and instructed the ALJ to consider Mr. Conley's opinion as to functional limitations, which was submitted after the ALJ issued her decision, address Dr. Dougherty's diagnoses of major depressive disorder, PTSD, and obsessive compulsive traits, and clarify the ALJ's consideration of ARNP Fusfield's opinion and the weight she accorded it. Tr. 675-96. While her appeal

was pending, Plaintiff filed a subsequent Title XVI application for supplemental security income benefits on June 1, 2015. Tr. 702-03. Plaintiff's claim was granted on initial determination, with an established onset date of April 6, 2015. *Id*.

On November 29, 2017, Plaintiff appeared before the same ALJ for a second hearing. Tr. 630-47. On August 15, 2018, the ALJ denied Plaintiff's claim. Tr. 592-620. At step one of the sequential evaluation process, the ALJ found Plaintiff had not engaged in substantial gainful activity from May 3, 2012, the application date, to April 6, 2015, the established onset date. Tr. 597. At step two, the ALJ found that Plaintiff had the following severe impairments prior to April 6, 2015: degenerative changes of the cervical, thoracic, and lumbar spine; affective disorder (depressive disorder); anxiety-related disorder; and personality disorder. Tr. 597-98.

At step three, the ALJ found that prior to April 6, 2015, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. Tr. 599-600. The ALJ then concluded that Plaintiff had the RFC to perform light work with the following limitations:

> [Plaintiff] could lift up to 20 pounds occasionally and lift/carry up to 10 pounds frequently, stand/walk for 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday, with normal breaks. [Plaintiff] could frequently climb ramps or stairs and occasionally climb ladders, ropes, or scaffolds. [Plaintiff] could frequently balance and stoop. [Plaintiff] needed to avoid concentrated exposure to

excessive vibration and workplace hazards (such as unprotected machinery and unprotected heights). [Plaintiff] was able to perform unskilled or semi-skilled work and well-learned tasks. [Plaintiff] could have superficial interaction with coworkers and the public.

Tr. 600-01.

At step four, the ALJ found Plaintiff was unable to perform any past relevant work. Tr. 611. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as cashier II, cleaner housekeeper, and assembler. Tr. 612. Therefore, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from May 3, 2012, the application date, through April 6, 2015, the established onset date. Tr. 613.

The Appeals Council did not assume jurisdiction of the case, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. § 416.1484.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated Plaintiff's symptom claims;

2. Whether the ALJ properly evaluated the medical opinion evidence; and

ORDER - 8

3.  Whether the ALJ conducted a proper step-five analysis.

ECF No. 14 at 9-10.

**DISCUSSION**

**A.      Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on clear and convincing reasons in discrediting her subjective symptom claims.  ECF No. 14 at 17-19.  An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.  SSR 16-3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted).  General findings are insufficient; rather, the ALJ must identify what

ORDER - 9

symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of an individual's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 416.929 (c). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence. Tr. 601. Plaintiff inaccurately contends the ALJ identified only three reasons to support her conclusion: (1) Plaintiff's allegations were out of proportion to physical examinations; (2) Plaintiff was not fully compliant with treatment; and (3) there were inconsistencies in Plaintiff's reports. ECF No. 14 at 18. However, the ALJ cited additional reasons for discounting Plaintiff's symptom claims, which Plaintiff did not challenge. Tr. 602, 604-06.

### 1. Inconsistent with Objective Medical Evidence

The ALJ found that Plaintiff's physical and mental symptom complaints were not supported by the medical evidence. Tr. 601-02. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2). Minimal objective evidence is a factor

which may be relied upon to discount a claimant's testimony, although it may not be the only factor. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

    a. Physical Impairments

The ALJ found Plaintiff's testimony that she was unable to work due to debilitating back pain which caused her to be unable to sit or stand for any length of time was inconsistent with the medical evidence in the record. Tr. 40-42, 179, 601-02; *see, e.g.,* Tr. 505, 1150 (June 2012 and November 2014: imaging studies prior to April 2015 demonstrated only mild degenerative changes at L4-5 and L5-Sl and degenerative changes of the thoracic spine); Tr. 1053 (February 2015: Plaintiff had degenerative changes in the cervical spine prior to April 2015, but a neurosurgeon who reviewed an MRI of Plaintiff's cervical spine reported the results as showing "some very typical middle-aged spondylitic changes, nothing severe at all," "no severe foraminal compromise, only some very modest foraminal narrowing at C5-6," and no objective evidence of cervical radiculopathy); Tr. 525 (January 2013: physician's treatment notes reported "[Plaintiff's] physical examination with regards to her cervical spine is essentially normal."). The ALJ also determined that Plaintiff's allegations were out of proportion to physical examinations prior to April 2015, which regularly revealed normal gait and station, Tr. 528, 530, 1094, as well as 5/5 motor strength, normal range of motion, normal reflexes, normal coordination, and normal sensation in the legs, Tr. 530, 544, 1165,

1169, 1173, 1177, 1185, 1189, 1193, 1196. Tr. 601. The ALJ noted that, despite Plaintiff's description of constant severe spinal pain, providers often observed that she was in no acute distress prior to April 2015. Tr. 604; *see e.g.,* Tr. 1169, 1173, 1177, 1185, 1189, 1193, 1196, 1233, 1242, 1247.

The ALJ determined that Plaintiff's allegations that she was unable to work due to constant neck pain that radiated down her arms were not corroborated by the record. Tr. 40, 42-43, 179, 602; *see, e.g.,* Tr. 519-20 (November 2012: nerve conduction study revealed only a mild abnormality of the left upper extremity that likely stemmed from a remote injury at C5-6, not from the motor vehicle accident in October 2011); Tr. 533 (November 2012: Plaintiff's EMG was negative for acute/chronic denervation, median/ulnar neuropathy, and acute/chronic radiculopathy in the upper extremities); Tr. 1236 (March and July 2013: physical examination finding showed normal range of motion of the neck, Tr. 544, 1236, as well as intact motor, sensory, and reflex function of the bilateral upper extremities, Tr. 528, 530, 544). The ALJ also observed that a physical examination in February 2015, a few months prior to the established onset date, was negative for atrophy. Tr. 602 (citing Tr. 1053).

b. Mental Impairments

The ALJ determined that Plaintiff's allegations of severe mental dysfunction were inconsistent with treatment notes that showed Plaintiff had intact memory,

cognition, attention, alertness/orientation, and fund of knowledge prior to April 2015. Tr. 603 (citing Tr. 530, 533, 1094, 1129, 1241). The ALJ found that, despite Plaintiff's description of constant severe depression and anxiety, providers often observed that she was cooperative and pleasant during appointments prior to April 2015. *See, e.g.,* Tr. 528, 532-33 (pleasant and cooperative with examination); Tr. 1169, 1173, 1177, 1185, 1189, 1193, 1196 (cooperative, not in acute distress, oriented to time, place, purpose, and person, grossly intact neuro exam); Tr. 1233, 1237, 1242 (cooperative and pleasant, not in acute distress); Tr. 1236 (cooperative, talkative). Plaintiff argues there was a "noteworthy amount of objective evidence" that supported her allegations and the ALJ erroneously failed to take this evidence into consideration. ECF No. 16 at 8. It is the ALJ's responsibility to resolve conflicts in the medical evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Where the ALJ's interpretation of the record is reasonable as it is here, it should not be second-guessed. *Rollins*, 261 F.3d at 857. The Court must consider the ALJ's decision in the context of "the entire record as a whole," and if the "evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks omitted). Here, the ALJ reasonably concluded, based on this record, that the objective medical evidence did not support the level of physical or mental impairments alleged by

ORDER - 14

Plaintiff. Tr. 603. The ALJ's finding is supported by substantial evidence and was a clear and convincing reason, in conjunction with the other identified reasons, *see infra*, to discount Plaintiff's symptom complaints.

### 2. Exaggeration

The ALJ found Plaintiff's physical and mental symptom claims were undermined by evidence of Plaintiff's symptom magnification. Tr. 604-05. The ALJ may appropriately consider a claimant's tendency to exaggerate. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (the ALJ appropriately considered Plaintiff's tendency to exaggerate when assessing Plaintiff's credibility, which was shown in a doctor's observation that Plaintiff was uncooperative during cognitive testing but was "much better" when giving reasons for being unable to work.). Plaintiff does not challenge this finding, and thus waives any argument as to symptom exaggeration. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (determining Court may decline to address on the merits issues not argued with specificity); *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief). Despite Plaintiff's waiver, the Court conducted an independent review of the ALJ's decision and finds the ALJ's opinion is supported by substantial evidence in the record. The ALJ cited numerous examples of Plaintiff's symptom magnification. Tr. 605-06; *see, e.g.,*

Tr. 414 (June 2012: Dr. Dougherty diagnosed rule-out symptom exaggeration); Tr. 65, 82) (after reviewing Dr. Dougherty's evaluation, Dr. Gilbert and Dr. Underwood noted Plaintiff gave out on mental status tasks, and opined that such results were indicative of suboptimal effort and symptom exaggeration); Tr. 524, 528 (January and March 2013: upon examination, Dr. Allen noted that Plaintiff sat with her head held forward and shoulders rounded forward, which exaggerated her upper kyphotic posture, she exhibited purposeful motion on tandem gait, and giveaway weakness on manual muscle testing); Tr. 528 (March 2013: Plaintiff showed giveaway weakness in all four extremities); Tr. 530 (March 2013: Dr. Condefer reported that Plaintiff presented as "diffusely weak," and that this was "out of proportion to her degree of functioning, i.e., gives 4-/5 in both legs but able to easily stand from chair and walk"); Tr. 1053 (February 2015: upon examination, Dr. Nussbaum reported that Plaintiff "does not make any effort on any sort of manual muscle testing" and she showed evidence of giveaway weakness). On this record, the ALJ reasonably concluded that Plaintiff exaggerated her symptoms. This finding is supported by substantial evidence and was a clear and convincing reason to discount Plaintiff's symptom complaints.

### 3. Inconsistent Statements

The ALJ also found Plaintiff's allegations that she could not work due to her physical and mental impairments were undermined by Plaintiff's inconsistent

reports throughout the record. Tr. 605-06. In evaluating a claimant's symptom claims, an ALJ may consider the consistency of an individual's own statements made in connection with the disability review process with any other existing statements or conduct under other circumstances. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (The ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid."). Plaintiff argues that the inconsistencies in her reports constitute evidence of her memory problems and emotional issues. ECF No. 16 at 8. The ALJ cited numerous examples in the record of Plaintiff's inconsistent statements. Tr. 605-06; *see, e.g.,* Tr. 179, 861, 863 (Plaintiff alleged disability since October 1, 2010, but in February and July 2011, in an effort to obtain unemployment benefits, Plaintiff asserted under penalty of perjury that there was no reason she could not "seek or accept full-time work" at that time); Tr. 179, 857, 859 (Plaintiff alleged that her last job ended in October 2010 because she was let go due to her depression, Tr. 179, however, she attested to the state of Washington that she stopped working in October 2010 due lack of work, Tr. 857, and contrary to both of these reports, her employer at the time revealed that she was let go due to unsatisfactory job performance during the probationary period, Tr. 859); Tr. 195-202 (June 2012: Despite Plaintiff's allegations of disabling mental impairments, Plaintiff's friend provided a third-

party function report and did not indicate that Plaintiff had any problems with mental symptoms); Tr. 65, 82 (Dr. Gilbert and Dr. Underwood noted that Plaintiff complained of psychological symptoms to Dr. Dougherty that were inconsistent with her earlier statements on a function report); Tr. 522, 290 (In January 2013, Plaintiff told Dr. Allen that she was involved in a motor vehicle accident in October 2011 and she was left unconscious and significantly disoriented after the accident, Tr. 522, but contemporaneous emergency records at the time of the accident show that she never had loss of consciousness and she was discharged in stable condition, without any symptoms that were life threatening, Tr. 290); Tr. 49-50, 508 (At the August 2013 hearing, Plaintiff testified that she did not drive anymore, Tr. 49-50, but her testimony was inconsistent with her disclosure two months earlier that she drove her daughter to school, Tr. 508): Tr. 508 (In a July 2013 evaluation, Plaintiff reported that she left her home only once per week, but Plaintiff later contradicted this statement when she reported taking her daughter to school each day); Tr. 47, 198 (Plaintiff testified at the August 2013 hearing that she never went anywhere alone, Tr. 47, but her testimony contradicted her friend's report that she could go out alone, Tr. 198); Tr. 43 (At the August 2013 hearing, Plaintiff testified that she experienced dizziness and falls, but medical records prior to April 2015 did not document any chronic issues with dizziness or falls); Tr. 41, 43 (At the August 2013 hearing, Plaintiff testified that she required the use of a

ORDER - 18

cane when she was not with her daughter, but medical records documented no prescriptions for a cane and did not mention the use of an assistive device during appointments, however providers regularly observed that Plaintiff had a normal gait); Tr. 34, 43, 49, 1067, 1118 (Plaintiff testified at the August 2013 hearing that she was dependent on her 14-year old daughter to take care of her, Tr. 34, 43, but the ALJ noted her testimony appeared somewhat implausible because Plaintiff also testified that her daughter had been in rehab for drug abuse, Tr. 49, 1067, and subsequent records in 2014 indicated that her daughter had become pregnant and was in and out of jail, Tr. 1118).  On this record, that Plaintiff offered inconsistent statements as to her symptom complaints, is a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's reported physical and mental symptoms.

### 4. Inconsistent with Activities

The ALJ found that Plaintiff's activities were inconsistent with the level of physical and mental impairment Plaintiff alleged.  Tr. 602.  An ALJ may consider a claimant's activities that undermine reported symptoms.  *Rollins*, 261 F.3d at 857.  If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or nonexertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Molina*, 674 F.3d at 1113.  "While a

claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13. Plaintiff failed to challenge this finding in her opening brief, so argument on this issue is waived. *See Carmickle*, 533 F.3d at 1161 n.2; *Kim*, 154 F.3d at 1000. Despite Plaintiff's waiver, the Court conducted an independent review of the ALJ's decision and finds the ALJ's opinion is supported by substantial evidence in the record.

The ALJ indicated that Plaintiff reported she was unable to work due to her disabling back pain. Tr. 40-42, 179, 602. However, the ALJ noted that Plaintiff's allegations of constant stabbing back pain were inconsistent with her ability to travel to and from Lebanon alone, an activity that required her to sit on an airplane for multiple hours at a time. Tr. 42, 508, 602. The ALJ noted that Plaintiff also reported she was unable to work due to her severe mental impairments. Tr. 44-47, 179, 602-03. However, the ALJ found that Plaintiff's allegations of severe mental impairments were also inconsistent with her activities, which included obtaining a 3.3 grade point average from online college classes, Tr. 41, and being a single parent to two teenage children, Tr. 34, one of whom was struggling with both legal and substance abuse issues, Tr. 1067, 1118. The ALJ's finding that Plaintiff's

activities were inconsistent with her specific alleged limitations is supported by substantial evidence.

### 5. *Drug Seeking Behavior*

The ALJ also discounted Plaintiff's symptom claims because she found that the record suggested Plaintiff engaged in possible drug-seeking behavior. Tr. 602. Drug-seeking behavior and conflicting inconsistent statements about drug use are appropriate grounds for the ALJ to discount a claimant's reported symptoms. *Thomas*, 278 F.3d at 959; *Edlund*, 253 F.3d at 1157; *Gray v. Comm'r, of Soc. Sec.*, 365 Fed. App'x. 60, 63 (9th Cir. 2010); *Lewis v. Astrue*, 238 Fed. App'x. 300, 302 (9th Cir. 2007); *Morton v. Astrue*, 232 Fed. App'x. 718, 719 (9th Cir. 2007). Plaintiff failed to challenge this finding in her opening brief, so argument on this issue is waived. *See Carmickle*, 533 F.3d at 1161 n.2; *Kim*, 154 F.3d at 1000. Despite Plaintiff's waiver, the Court conducted an independent review of the ALJ's decision and finds the ALJ's opinion is not supported by substantial evidence in the record.

The ALJ based this finding on a notation by ARNP Fusfield in one treatment note. Tr. 602-03 (citing Tr. 1235). The ALJ noted that during an appointment in March 2013, ARNP Fusfield read Plaintiff a report which recommended she not be given opioids. Tr. 1235. ARNP Fusfield noted that she had not given Plaintiff any opioids since October 2012. Tr. 1235. Her treatment note indicated that she

learned Plaintiff had obtained an opioid prescription from another provider who was unaware of this restriction. Tr. 1235. ARNP Fusfield reported that she told Plaintiff she would not give her narcotics anymore and she needed to follow the directions of pain management. Tr. 1235. ARNP Fusfield noted that she offered physical therapy to Plaintiff, "but she does not want that." Tr. 1235. Defendant argues that "[t]he ALJ reasonably concluded that this suggested drug-seeking behavior because Plaintiff rejected [ARNP] Fusfield's offer of physical therapy in lieu of narcotics." ECF No. 15 at 7. However, it is not clear from ARNP Fusfield's treatment note that Plaintiff refused physical therapy solely because she wanted narcotics instead. There were no other instances in the record that suggested Plaintiff was engaged in drug-seeking behavior. Further, the ALJ found that this treatment note suggested only "possible" drug-seeking behavior. Tr. 602. The ALJ's finding that Plaintiff engaged in drug-seeking behavior is not supported by the record. This error is harmless because the ALJ identified numerous specific, clear, and convincing reasons to discount Plaintiff's symptom claims. *See Carmickle*, 533 F.3d at 1162-63; *Molina*, 674 F.3d at 1115 ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record."); *Batson v. Comm'r of Soc. Sec. Admin*., 359 F.3d 1190, 1197 (9th Cir. 2004) (holding that any error the ALJ

committed in asserting one impermissible reason for claimant's lack of credibility did not negate the validity of the ALJ's ultimate conclusion that the claimant's testimony was not credible).

### 6. *Noncompliance with Treatment*

The ALJ discounted Plaintiff's symptom claims because she was often noncompliant with treatment prior to April 2015. Tr. 602-03. An unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be considered when evaluating a claimant's subjective symptoms. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). Evidence of a claimant's self-limitation and lack of motivation to seek treatment are appropriate considerations in determining the credibility of a claimant's subjective symptom reports. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001). When there is no evidence suggesting that the failure to seek or participate in treatment is attributable to a mental impairment rather than a personal preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the alleged severity of complaints. *Molina*, 674 F.3d at 1113-14. But when the evidence suggests lack of mental health treatment is partly due to a claimant's mental health condition, it may be inappropriate to consider a claimant's lack of mental health treatment when evaluating the claimant's failure to participate in treatment. *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).

The ALJ noted that Plaintiff alleged she had chronic debilitating depression, anxiety, and panic attacks that caused marked/severe cognitive, social, and mental limitations. Tr. 603. However, the ALJ highlighted several instances in the record that revealed Plaintiff was noncompliant with mental health treatment. Tr. 603; *see, e.g.,* Tr. 1133 (July 8, 2014: Plaintiff's mental health provider expressed concerns about her irregular attendance); Tr. 1103 (November 25, 2014: Plaintiff's mental health provider noted she was showing a lack of commitment in her treatment and not participating in sessions); Tr. 1093 (February 23, 2015: Plaintiff told her mental health provider that she took medications, "when I remember," and her provider discussed with her the importance of compliance). The record also reveals additional comments from Plaintiff's mental health provider about her lack of commitment to treatment. *See* Tr. 1137 (June 5, 2014: Plaintiff's mental health provider noted that Plaintiff "needs to continue to look at her commitment if she is going to receive the full benefit from treatment"); Tr. 1135 (July 1, 2014: Plaintiff's mental health provider discussed Plaintiff's commitment to treatment and "how she is not fulfilling her obligation by missing so many group sessions"); Tr. 1100 (February 4, 2015: "At this time [Plaintiff] has poor attendance and is not following through with treatment recommendations for the past several months"). Further, the ALJ noted that despite Plaintiff's claims of debilitating back pain prior to April 2015, Plaintiff was not fully compliant with treatment. Tr. 602. The ALJ

ORDER - 24

cited a March 2013 treatment note where ARNP Fusfield reported having referred

Plaintiff to physical therapy for her spine, but she was discharged from services

due to not showing up for three appointments. Tr. 602 (citing Tr. 1236).

Plaintiff does not challenge the ALJ's finding that she did not follow

through with treatment, but claims this is a direct symptom of her mental health

impairments. ECF No. 14 at 18. Specifically, Plaintiff contends that her "inability

to follow through with treatment is a testament to the debilitating anxiety that often

prevents her from even leaving her house." ECF No. 14 at 18 (citing Tr. 1082,

1088, 1211). The fact that she was not compliant with her mental health treatment

or with her physical therapy, despite the recommendations of her providers and her

ability to do so, supports the ALJ's conclusions regarding Plaintiff's assertion of

disabling symptoms of depression, anxiety, panic attacks, and back pain.

Alternatively, even if the failure to pursue physical therapy and mental health

treatment was related to Plaintiff's depression and anxiety, any error is harmless

because it does not invalidate the overall analysis of Plaintiff's symptoms. *See,

e.g.*, *Batson*, 359 F.3d at 1197 (upholding ALJ's credibility determination even

though one reason may have been in error).

### 7. *Situational Stressors*

The ALJ found that Plaintiff's symptom testimony was attributable in part to

situational stressors rather than due solely to her medically determinable

impairments. Tr. 604. An ALJ may reasonably find a claimant's symptom testimony less credible where the evidence "squarely support[s]" a finding that the claimant's impairments are attributable to situational stressors rather than impairments. *Wright v. Colvin*, No. 13-CV-3068-TOR, 2014 WL 3729142, at *5 (E.D. Wash. July 25, 2014) ("Plaintiff testified that she would likely be able to maintain full-time employment but for the 'overwhelming' stress caused by caring for her family members"). However, "because mental health conditions may presumably *cause* strained personal relations or other life stressors, the Court is not inclined to opine that one has caused the other based only on the fact that they occur simultaneously." *Brendan J. G. v. Comm'r, Soc. Sec. Admin.*, No. 6:17-CV-742-SI, 2018 WL 3090200, at *7 (D. Or. June 20, 2018) (emphasis in original).

The ALJ identified issues with Plaintiff's children (her son's health and her daughter's pregnancy and substance abuse), Plaintiff's pain and health, finances, loss of housing, and legal issues related to a car accident as situational stressors. Tr. 604; *see, e.g.,* Tr. 1114 (September 2014: during a group therapy session, Plaintiff had to step out several times to deal with stressors involving her son, who was sick); Tr. 1118 (September 2014: at an appointment, Plaintiff revealed stressors involving her daughter, whom she recently learned was pregnant and was in and out of jail); Tr. 1106 (October 2014: Plaintiff complained of increased symptoms after receiving an eviction notice); Tr. 1067 (February 2015: Plaintiff

endorsed suicidal ideation due to multiple stressors, including her health, pain, finances, and daughter's substance abuse issues, though she asserted she would never kill herself because of her children); Tr. 1084-85 (March 2015: Plaintiff reported being stressed about an upcoming deposition related to a car accident). Plaintiff's increased stress with issues of illness and substance abuse among her children, and her physical pain from a car accident, may not be caused by Plaintiff's impairments. However, Plaintiff's other stressors from child custody issues, living arrangements, and finances are less clearly separable from Plaintiff's mental impairments. Unlike prior cases in this district, where the record clearly contained evidence that the claimant would have been capable of working but for the presence of a specific situational stressor, here Plaintiff's impairments and situational stressors are more complex and intertwined. *See Wright*, 2014 WL 3729142, at *5. The ALJ appeared to acknowledge that the evidence did not squarely support a finding that Plaintiff's impairments were attributable to situational stressors rather than her impairments, as she noted that Plaintiff's symptoms were "at least in part" situational in nature. Tr. 604. This finding is not supported by substantial evidence. However, this error is harmless because the ALJ identified numerous specific, clear, and convincing reasons to discount Plaintiff's symptom claims. *See Carmickle*, 533 F.3d at 1162-63; *Molina*, 674 F.3d at 1115; *Batson*, 359 F.3d at 1197.

## B.     Medical Opinion Evidence

Plaintiff challenges the ALJ's evaluation of the medical opinions of Mara Fusfield, ARNP, Charles Bulfinch, D.O., Roland Dougherty, Ph.D., and Derrick Conley, M.S.W.  ECF No. 14 at 11-17.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician's opinion. *Id.* at 1202.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported

by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2011) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester,* 81 F.3d at 830–31). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews*, 53 F.3d at 1041.

"Only physicians and certain other qualified specialists are considered '[a]cceptable medical sources.' " *Ghanim*, 763 F.3d at 1161 (alteration in original); *see* 20 C.F.R. § 416.913 (2013).[3] However, an ALJ is required to consider evidence from non-acceptable medical sources. *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987); 20 C.F.R. § 416.913(d) (2013). "Other sources" include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses and other non-medical sources. 20 C.F.R. § 20 C.F.R. § 416.913(d)

---

[3] For cases filed prior to March 27, 2017, the definition of an acceptable medical source, as well as the requirement that an ALJ consider evidence from non-acceptable medical sources, are located at 20 C.F.R. § 416.913(d) (2013).

ORDER - 29

(2013).  An ALJ may reject the opinion of a non-acceptable medical source by giving reasons germane to the opinion.  *Ghanim*, 763 F.3d at 1161.

### 1. Ms. Fusfield

On June 5, 2012, Plaintiff's treating nurse, Mara Fusfield, ARNP, completed an evaluation of Plaintiff.  Tr. 416-18.  She noted that Plaintiff had problems with her back, neck, right arm, and leg.  Tr. 416.  ARNP Fusfield also indicated that Plaintiff had depression.  Tr. 416.  She opined that Plaintiff could work "0" hours per week and was limited to sedentary work.  Tr. 416-17.  The ALJ gave ARNP Fusfield's opinion little weight.  Tr. 607.  Because ARNP Fusfield was an "other source," the ALJ was required to provide germane reasons to discount her opinion. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

#### a. "Other Source" Opinion

In discrediting her opinion, the ALJ noted that ARNP Fusfield was not an acceptable medical source.  Tr. 608.  An ALJ must consider the testimony of lay witnesses in determining whether a claimant is disabled.  *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006).  Lay witness testimony cannot establish the existence of medically determinable impairments, but lay witness testimony is "competent evidence" as to "how an impairment affects [a claimant's] ability to work."  *Id.*; 20 C.F.R. § 416.913; *see also Dodrill*, 12 F.3d at 918-19 ("[F]riends and family members in a position to observe a claimant's symptoms

and daily activities are competent to testify as to her condition.").  If lay testimony is rejected, the ALJ "'must give reasons that are germane to each witness.'" *Nguyen*, 100 F.3d at 1467 (citing *Dodrill*, 12 F.3d at 919).  The fact that ARNP Fusfield was not an acceptable medical source was not a germane reason to reject her opinion.

However, the ALJ also noted that she gave greater weight to the opinions of Guillermo Rubio, M.D., and Charles Nussbaum, M.D., who were both acceptable medical sources.  Tr. 608.  The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other evidence in the record and is consistent with it.  *Andrews*, 53 F.3d at 1041.  Other cases have upheld the rejection of an examining or treating physician based in part on the testimony of a nonexamining medical advisor when other reasons to reject the opinions of examining and treating physicians exist independent of the nonexamining doctor's opinion.  *Lester*, 81 F.3d at 831 (citing *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989) (reliance on laboratory test results, contrary reports from examining physicians and testimony from claimant that conflicted with treating physician's opinion)); *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results).  Thus, case law requires not only an opinion from the consulting physician but also substantial evidence (more than a

mere scintilla but less than a preponderance), independent of that opinion which supports the rejection of contrary conclusions by examining or treating physicians. *Andrews*, 53 F.3d at 1039.

In October 2012, Dr. Rubio, a State agency medical consultant, reviewed the medical record without updated records, and opined that Plaintiff could perform light work with some postural and environmental restrictions. Tr. 75-89. The ALJ gave Dr. Rubio's opinion significant weight. Tr. 607. The ALJ found that although Dr. Rubio did not have the opportunity to review updated medical records, his opinion was consistent with the longitudinal evidence during the relevant period, including Plaintiff's workup findings and physical examinations. Tr. 607. Plaintiff does not challenge the weight given to Dr. Rubio's opinion. As discussed *supra*, the nonexamining opinion of Dr. Rubio was consistent with other independent evidence in the record, and therefore, constituted substantial evidence in support of the ALJ's decision to discredit the opinion of ARNP Fusfield.

In February 2015, Dr. Nussbaum, a spinal specialist and neurosurgeon, examined Plaintiff and reviewed the results from a CT scan of Plaintiff's back and an MRI of Plaintiff's neck. Tr. 1053. Dr. Nussbaum concluded there was no objective evidence of radiculopathy in Plaintiff's neck and reported only age appropriate changes. Tr. 1053. The ALJ assigned greater weight to the opinion of Dr. Nussbaum than the opinion of ARNP Fusfield. Tr. 608. Plaintiff does not

challenge the weight given to Dr. Nussbaum's opinion. Dr. Nussbaum's opinion constituted substantial evidence in support of the ALJ's decision to discount the opinion of ARNP Fusfield. It was reasonable for the ALJ to accord greater weight to the opinions of Dr. Rubio and Dr. Nussbaum than to ARNP Fusfield's opinion.

### b. Inconsistent with Objective Medical Evidence

The ALJ discounted ARNP Fusfield's opinion because it was not supported by the objective medical evidence. Tr. 607-08. Factors to evaluating a medical opinion include the amount of relevant evidence that supports the opinion and the consistency of the medical opinion with the record. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn*, 495 F.3d at 631; 20 C.F.R. § 416.927(c)(4). A medical opinion may be rejected if it is unsupported by medical findings and treatment notes. *Bray*, 554 F.3d at 1228; *Batson*, 359 F.3d at 1195; *Thomas*, 278 F.3d at 957; *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). The ALJ's decision to discount ARNP Fusfield's opinion that Plaintiff could work "0" hours per week and was limited to sedentary work is supported by substantial evidence. Tr. 607. For example, a CT scan of Plaintiff's back revealed only mild findings, Tr. 1150; an electromyogram of Plaintiff's left upper extremity was "mildly abnormal" and showed no evidence of acute denervation, chronic denervation, or median or ulnar neuropathy, Tr. 519-20; and Dr. Nussbaum reported that imaging showed Plaintiff

ORDER - 33

had age-appropriate findings in the cervical spine, Tr. 1053. Ms. Fusfield's opinion was also inconsistent with longitudinal physical examinations prior to May 2015, showing normal gait as well as normal motor strength, normal range of motion, normal reflexes, normal coordination, and normal sensation in the bilateral upper and lower extremities. *See, e.g.,* Tr. 528, 530, 544, 1094, 1165, 1169, 1173, 1177, 1185, 1193. Plaintiff argues that the ALJ erred because the record established a pattern of more severe objective findings that were consistent with Ms. Fusfield's opinion. ECF No. 14 at 12. The Court must consider the ALJ's decision in the context of "the entire record as a whole," and if the "evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan*, 528 F.3d at 1198 (internal quotation marks omitted). Here, the ALJ reasonably concluded that ARNP Fusfield's opinion that Plaintiff could not work at all was inconsistent with the objective findings. This was a germane reason to discount ARNP Fusfield's opinion.

c. Inconsistent with Activities

The ALJ found that ARNP Fusfield's opinion was inconsistent with Plaintiff's activities during the relevant period. Tr. 607. An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Here, the ALJ observed that ARNP Fusfield concluded Plaintiff was unable to work at all

ORDER - 34

due to her back, neck, right arm, and leg problems. Tr. 607. ARNP Fusfield opined that Plaintiff could comfortably sit for only 15 to 20 minutes. Tr. 416. Further, she reported that Plaintiff "cannot sit long periods." Tr. 416. However, the ALJ observed that Plaintiff was able to travel alone to Lebanon, an activity that would require her to stand in a security line and sit on an airplane for multiple hours at a time. Tr. 600, 602, 607-08. The ALJ reasonably concluded that the record documented activities that were inconsistent with ARNP Fusfield's opinion that Plaintiff was unable to work at all due in part to her problems with both sitting and standing. This was a germane reason to discount ARNP Fusfield's opinion.

d. Failure to Follow Treatment Recommendations

The ALJ determined that ARNP Fusfield's opinion was inconsistent with Plaintiff's failure to follow treatment recommendations. Tr. 607. An ALJ may discredit a claimant's symptom complaints if the claimant fails to show good reason for failing to follow treatment recommendations. *Smolen*, 80 F.3d at 1284. However, the fact that a claimant fails to follow recommended treatment is not directly relevant to the weight of a medical provider's opinion. *See* 20 C.F.R. § 416.927(c). The ALJ determined that ARNP Fusfield's assessment of severe limitations was inconsistent with Plaintiff's noncompliance with physical therapy appointments which ARNP Fusfield had recommended. Tr. 607. Without further explanation of how Plaintiff's failure to follow treatment recommendations

specifically undermined ARNP Fusfield's medical opinions, this was not a germane reason to discredit ARNP Fusfield's opinion. However, this error is harmless because the ALJ provided other germane reasons to discredit ARNP Fusfield's opinion. *See Parra v. Astrue*, 481 F.3d 747 (9th Cir. 2007).

e. Inconsistent with Treatment Notes

The ALJ discredited ARNP Fusfield's opinion because the severity of the assessed limitations was inconsistent with her treatment notes. Tr. 608. A medical opinion may be rejected if it is unsupported by medical findings and treatment notes. *Bray*, 554 F.3d at 1228; *Batson*, 359 F.3d at 1195; *Thomas*, 278 F.3d at 957; *Tommasetti*, 533 F.3d at 1041; *Matney*, 981 F.2d at 1019. On June 5, 2012, ARNP Fusfield relied, in part, on Plaintiff's depression in concluding that Plaintiff would be limited to working "0" hours per week. Tr. 416. However, her treatment notes from the same day as her opinion indicated that Plaintiff had normal mood and affect, full alertness/orientation, and no memory impairment. Tr. 501-02. Further, her treatment notes from the month after her opinion showed that Plaintiff had appropriate mood and affect, normal thought content, full alertness and orientation, no problems with speech, articulation, abstract reasoning, memory, attention span, or concentration, and appropriate judgment and insight. Tr. 500. The ALJ reasonably concluded that ARNP Fusfield's contemporaneous treatment notes did

not support the level of impairment she opined as to Plaintiff's depression. Tr. 608. This was a germane reason for discounting ARNP Fusfield's opinion.

### f. Relied on Plaintiff's Self-Reports

Finally, the ALJ discounted ARNP Fusfield's opinion because it appeared to rely heavily on Plaintiff's subjective pain complaints and limitations. Tr. 608. A physician's opinion may be rejected if it based on a claimant's properly discounted complaints. *Tonapetyan*, 242 F.3d at 1149; *Morgan*, 169 F.3d at 602; *Fair*, 885 F.2d at 604. However, when an opinion is not more heavily based on a patient's discounted self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion. *Ghanim*, 763 F.3d at 1162; *Ryan*, 528 F.3d at 1199-1200. As discussed *supra*, Plaintiff's symptom complaints were properly discounted and Plaintiff failed to establish that the medical evidence of record, including ARNP Fusfield's contemporaneous treatment notes, supported ARNP Fusfield's opinion that Plaintiff was unable to work. This was a germane reason for discounting ARNP Fusfield's opinion.

### 2. Dr. Bulfinch

On February 13, 2015, treating physician Charles Bulfinch, D.O. completed an evaluation of Plaintiff. Tr. 1054-56. He opined that Plaintiff was severely limited due to her lumbar and cervical spine conditions. Tr. 1054-56. Dr. Bulfinch indicated that Plaintiff had severe loss of motion, severe limitations in her ability to

ambulate, and she was unable to tolerate carrying light loads or to sit or stand for

any extended time.  Tr. 1054.  Dr. Bulfinch opined that Plaintiff was limited to

working "0" hours per week.  Tr. 1054.  The ALJ gave Dr. Bulfinch's opinion little

weight.  Tr. 607.  Because Dr. Bulfinch's opinion was contradicted by the

nonexamining opinion of Dr. Rubio, Tr. 75-89, the ALJ was required to provide

specific and legitimate reasons for discounting Dr. Bulfinch's opinion.  *Bayliss*,

427 F.3d at 1216.

> a.  Inconsistent with Other Record Evidence

The ALJ discounted Dr. Bulfinch's opinion because it was inconsistent with

other record evidence.  Tr. 608.  A medical opinion may be rejected if it is

unsupported by medical findings.  *Bray*, 554 F.3d at 1228; *Batson*, 359 F.3d at

1195; *Thomas*, 278 F.3d at 957; *Tonapetyan*, 242 F.3d at 1149; *Matney*, 981 F.2d

at 1019.  An ALJ may discredit physicians' opinions that are unsupported by the

record as a whole.  *Batson*, 359 F.3d at 1195.  Moreover, an ALJ is not obligated to

credit medical opinions that are unsupported by the medical source's own data

and/or contradicted by the opinions of other examining medical sources.

*Tommasetti*, 533 F.3d at 1041.  The ALJ highlighted many notable inconsistencies

between Dr. Bulfinch's opined limitations and the record evidence.  Tr. 608; *see,

e.g.,* Tr. (1053-54, 1094 (Dr. Bulfinch found that Plaintiff's "chronic muscle spasm

is so severe that it severely limits her range of motion and ability to ambulate,"

ORDER - 38

which contributed to his conclusion that Plaintiff was severely limited and unable to work at all, but treatment notes from the same month as his opinion showed Plaintiff had a normal, steady gait at two separate appointments); Tr. 1053-55 (Dr. Bulfinch opined that Plaintiff was unable to lift, but a physical examination that month showed intact sensation in her upper extremities); Tr. 530, 544, 1055, 1165, 1169, 1173, 1177, 1185, 1189, 1193, 1196 (Dr. Bulfinch found that Plaintiff was severely limited, but other physical examinations prior to May 2015 regularly showed normal motor strength, normal range of motion, normal reflexes, normal coordination, and normal sensation in the bilateral upper and lower extremities); Tr. 1054, 1150 (Dr. Bulfinch opined that Plaintiff's back and neck pain was disabling, observing that "there really is no position of ease for her," and she was "unable to sit or stand for extended or really even short periods of time," but the record showed mild lumbar imaging findings); Tr. 1053-54 (Dr. Bulfinch found that Plaintiff's back and neck pain was disabling, but spinal surgeon Dr. Nussbaum reviewed Plaintiff's cervical MRI in February 2015, the same month as Dr. Bulfinch's opinion, and noted age-appropriate degeneration with no severe foraminal compromise, only some modest foraminal narrowing at C5-6, and no objective evidence of cervical radiculopathy). Further, the ALJ determined that Dr. Bulfinch's assessment of severe limitations would be consistent with signs of atrophy, but noted that when Plaintiff was examined in February 2015, the same

ORDER - 39

month as Dr. Bulfinch's opinion, Plaintiff showed no signs of atrophy.  Tr. 608 (citing Tr. 1053).

Plaintiff argues that, while there may have been a few instances in the record with mild findings, there were numerous notations in the record of objective evidence that supported Dr. Bulfinch's opinion.  ECF No. 14 at 14-15.  While the record may support another reasonable interpretation, the ALJ's finding that Dr. Bulfinch's extreme functional limitations were not supported by the imaging results, MRI results, treatment notes, and physical examinations that overall indicate mild conditions is a rational finding.  *See Batson*, 359 F.3d at 1198 (recognizing that when the evidence in the record is subject to more than one rational interpretation, the court defers to the ALJ's finding).  This was a specific and legitimate reason, supported by substantial evidence, to discount Dr. Bulfinch's opinion.

b.  Inconsistent with Activities

The ALJ found that Dr. Bulfinch's opinion was inconsistent with Plaintiff's activities during the relevant period, specifically citing her travel to Lebanon.  Tr. 608.  An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities.  *Morgan*, 169 F.3d at 601.  Here, the ALJ observed that Dr. Bulfinch opined Plaintiff was unable to work at all due to her back and neck pain.  Tr. 1054.  Dr. Bulfinch stated that Plaintiff could "not tolerate sitting or

standing for any extended time," and further observed that she was "unable to sit or stand for extended or really even short periods of time." Tr. 1054. However, the ALJ observed that Plaintiff was able to travel alone to Lebanon, an activity that would require her to stand in a security line and sit on an airplane for multiple hours at a time. Tr. 600, 602, 607-08. The ALJ reasonably concluded that the record documented activities that were inconsistent with Dr. Bulfinch's opinion that Plaintiff was unable to work at all due in part to her inability to sit or stand for even short periods of time. This was a specific and legitimate reason, supported by substantial evidence, to discount Dr. Bulfinch's opinion.

### c. Based on Self-Reports

The ALJ also discounted Dr. Bulfinch's opinion because it appeared to rely heavily on Plaintiff's subjective pain complaints and limitations. Tr. 608. A physician's opinion may be rejected if it is based on a claimant's properly discounted complaints. *Tonapetyan*, 242 F.3d at 1149; *Morgan*, 169 F.3d at 602; *Fair*, 885 F.2d at 604. However, when an opinion is not more heavily based on a patient's discounted self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion. *Ghanim*, 763 F.3d at 1162; *Ryan*, 528 F.3d at 1199-1200. As discussed *supra*, Plaintiff's symptom complaints were properly discounted and Plaintiff failed to establish that the record evidence, including treatment notes from the same month as Dr. Bulfinch's opinion,

supported Dr. Bulfinch's opinion that Plaintiff was unable to work. This was a specific and legitimate reason, supported by substantial evidence, to discount Dr. Bulfinch's opinion.

### 3. Dr. Dougherty

On June 25, 2012, examining psychologist Roland Dougherty, Ph.D. conducted a psychological evaluation of Plaintiff. Tr. 408-15. Dr. Dougherty diagnosed Plaintiff with major depressive disorder, generalized anxiety disorder, cognitive disorder not otherwise specified, PTSD, in partial remission, and obsessive-compulsive traits. Tr. 408-15. Dr. Dougherty assigned Plaintiff a GAF score of 45. Tr. 414. He indicated that Plaintiff could only do physical tasks for short periods, her social skills were good, and she should be able to understand, remember, and follow simple directions. Tr. 415.

The ALJ gave Dr. Dougherty's opinion partial weight. Tr. 609. The ALJ did not fully adopt Dr. Dougherty's assessment of Plaintiff's cognitive functioning, nor did she adopt Dr. Dougherty's assessment of Plaintiff's physical functioning or the assigned GAF score. Tr. 609-10. Because Dr. Dougherty's opinion was contradicted by the nonexamining opinion of Dr. Underwood, Tr. 82, the ALJ was required to provide specific and legitimate reasons for discounting Dr. Dougherty's opinion. *Bayliss*, 427 F.3d at 1216.

a.  Global Assessment Functioning (GAF)

The ALJ discounted Dr. Dougherty's assigned GAF score of 45, finding that it relied in part on Plaintiff's self-report and on conditions that were not medically established.  Tr. 609-10.  While a GAF score may help guide an ALJ's decision, an ALJ is not bound to consider a GAF score.[4]  The Commissioner has explicitly disavowed use of GAF scores as indicators of disability.  65 Fed. Reg. 50746-01, 50764-65 (Aug. 21, 2000) ("The GAF scale . . . does not have a direct correlation to the severity requirements in our mental disorder listing.").  The GAF scale is no longer included in the DSM–V.  *See* Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* at 16 (5th ed. 2013) ("It was recommended that the GAF be dropped from the DSM-V for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk and disabilities in its descriptors) and (questionable psychometrics in routine practice.")).

_____

[4] The GAF Scale measures "the clinician's judgment of the individual's overall level of functioning" as to "psychological, social, and occupational functioning," but not "impairment in functioning due to physical (or environmental) limitations." Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders, at 32 (4th ed. Text Revision 2000); *see Morgan,* 169 F.3d at 598, n.1.

Plaintiff argues that the ALJ's reason for rejecting the GAF score was not valid because this fails to give proper deference to a medical provider. ECF No. 14 at 15. However, the ALJ explained that the GAF scores represent only snapshots of Plaintiff's functioning for a particular moment in time, they are not equivalent to a narrative statement of Plaintiff's functioning, they consider secondary factors, such as limited finances and unemployment, that are irrelevant to the disability determination, and they rely heavily on Plaintiff's self-report, which the ALJ found was not fully credible. Tr. 610-11. Finding that Dr. Dougherty's assigned GAF score was based in part on Plaintiff's properly rejected self-report was a specific and legitimate reason to discredit Dr. Dougherty's opinion about Plaintiff's GAF score.

### b.  Symptom Exaggeration/Poor Effort

The ALJ found that Dr. Dougherty's opinion about Plaintiff's cognitive functioning was based on test results where Plaintiff did not give a full effort in testing. Tr. 610. Evidence that a claimant exaggerated her symptoms is a clear and convincing reason to reject the doctor's conclusions. *Thomas,* 278 F.3d at 958. Plaintiff argues that the ALJ's reason for discrediting Dr. Dougherty's cognitive functioning opinion was not valid because evaluating psychologist Emma Joan Billings, Ph.D., noted that poor cognitive testing results may have been due to Plaintiff experiencing cognitive decline associated with Parkinson's disease. ECF

ORDER - 44

No. 14 at 15-16 (citing Tr. 1211). However, as argued by Defendant, the ALJ

directly addressed this point by noting that Dr. Billings said Plaintiff's cognitive

disorder might only "possibly" be due to Parkinson disease. ECF No. 15 at 16

(citing Tr. 598, 1210). Further, Dr. Billings asserted her theory that Plaintiff's

poor cognitive test performance might be due to the onset of Parkinson's disease in

October 2015, six months beyond the period at issue in this case. Tr. 1210. As

discussed *supra*, the ALJ reasonably found that Plaintiff exaggerated her mental

symptom allegations. Tr. 605-06. Further, the ALJ noted that Dr. Dougherty

diagnosed rule-out symptom exaggeration in June 2012, Tr. 414, and after

reviewing Dr. Dougherty's evaluation, Dr. Gilbert and Dr. Underwood noted

Plaintiff gave out on mental status tasks and opined that such results were

indicative of suboptimal effort and symptom exaggeration, Tr. 65, 82. The ALJ

reasonably concluded that Dr. Dougherty's opinion was entitled to partial weight

because it was based on Plaintiff's poor effort during testing. Tr. 610. This was a

specific and legitimate reason to discredit Dr. Dougherty's opinion.

    *4. Mr. Conley*

    On December 27, 2013, treating social worker Derrick Conley, M.S.W.,

opined that Plaintiff could work "0" hours per week due to depression, panic

disorder, and borderline personality disorder. Tr. 589-91. The ALJ gave Mr.

Conley's opinion little weight. Tr. 610. Because Mr. Conley was an "other

source," the ALJ was required to provide germane reasons to discount his opinion. *Dodrill*, 12 F.3d at 918.

### a. "Other Source" Opinion

In discrediting his opinion, the ALJ noted that Mr. Conley was not an acceptable medical source. Tr. 610. An ALJ must consider the testimony of lay witnesses in determining whether a claimant is disabled. *Stout*, 454 F.3d at 1053. Lay witness testimony cannot establish the existence of medically determinable impairments, but lay witness testimony is "competent evidence" as to "how an impairment affects [a claimant's] ability to work." *Id*.; 20 C.F.R. § 416.913; *see also Dodrill*, 12 F.3d at 918-19 ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition."). If lay testimony is rejected, the ALJ "'must give reasons that are germane to each witness.'" *Nguyen*, 100 F.3d at 1467 (citing *Dodrill*, 12 F.3d at 919). The fact that Mr. Conley was not an acceptable medical source was not a germane reason to reject his opinion.

However, the ALJ also noted that she gave greater weight to the opinions of Dr. Dougherty, John Gilbert, Ph.D., and Sharon Underwood, Ph.D., who were all acceptable medical sources. Tr. 610. The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other evidence in the record and is consistent with it. *Andrews*, 53 F.3d at 1041. Case law requires not only an

opinion from the consulting physician but also substantial evidence (more than a mere scintilla but less than a preponderance), independent of that opinion which supports the rejection of contrary conclusions by examining or treating physicians. *Andrews*, 53 F.3d at 1039.

In June and October 2012, Drs. Gilbert and Underwood, State agency psychologists, reviewed the medical record without updated records, and opined that Plaintiff could perform at least simple work tasks and could likely perform detailed tasks. Tr. 69, 86. Both psychologists opined that Plaintiff's attention and concentration deficits would not affect her ability to work 40 hours per week, she could have superficial interactions with coworkers and supervisors and limited interaction with the public, and she would work best in a job with a predictable environment. Tr. 69-70, 86-87. The ALJ gave significant weight to the opinions of Drs. Gilbert and Underwood. Tr. 609. The ALJ found that although Drs. Gilbert and Underwood did not have the opportunity to review updated medical records, their opinions were consistent with the longitudinal evidence during the period at issue. Tr. 609. Plaintiff does not challenge the weight given to the opinions of Drs. Gilbert and Underwood. As discussed *supra*, the nonexamining opinions of Drs. Gilbert and Underwood were consistent with other independent evidence in the record, and therefore, constituted substantial evidence in support of the ALJ's decision to discredit the opinion of Mr. Conley. It was reasonable for

the ALJ to give more weight to the opinions of Drs. Gilbert and Underwood than to the opinion of Mr. Conley.

b.  Inconsistent with Treatment Notes

The ALJ determined that Mr. Conley's opinion of marked/severe mental limitations was out of proportion to the treatment notes in the record.  A medical opinion may be rejected if it is unsupported by medical findings and treatment notes.  *Bray*, 554 F.3d at 1228; *Batson*, 359 F.3d at 1195; *Thomas*, 278 F.3d at 957; *Tommasetti*, 533 F.3d at 1041; *Matney*, 981 F.2d at 1019.  The ALJ noted that treatment notes in the record regularly showed that Plaintiff was cooperative and pleasant, in no acute distress, and exhibited intact memory, cognition, attention, alertness and orientation, and fund of knowledge during appointments.  Tr. 610, *see, e.g.,* Tr. 528, 532-33 (pleasant and cooperative with examination); Tr. 1169, 1173, 1177, 1185, 1189, 1193, 1196 (cooperative, not in acute distress, oriented to time, place, purpose, and person, grossly intact neuro exam); Tr. 1233, 1237, 1242 (cooperative and pleasant, not in acute distress); Tr. 1236 (cooperative, talkative).  Plaintiff asserts that, while there were some normal mental status findings, the record also established a pattern of abnormal mental status findings, poor memory and concentration, decreased cognition and extreme findings such as suicidal ideation.  ECF No. 14 at 16.  The Court must consider the ALJ's decision in the context of "the entire record as a whole," and if the "evidence is susceptible to

more than one rational interpretation, the ALJ's decision should be upheld." *Ryan*, 528 F.3d at 1198 (internal quotation marks omitted).  Here, the ALJ reasonably concluded that Mr. Conley's opinion that Plaintiff could not work at all was inconsistent with treatment notes in the record.  This was a germane reason to discredit Mr. Conley's opinion.

### c.  Inconsistent with Activities

The ALJ found that Mr. Conley's opinion was inconsistent with Plaintiff's activities.  Tr. 610.  An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities.  *Morgan*, 169 F.3d at 601.  Here, the ALJ observed that Mr. Conley opined Plaintiff was unable to work at all due to depression, panic disorder, and borderline personality disorder.  Tr. 610.  However, the ALJ also observed that Plaintiff was able to travel alone to Lebanon, an activity that would require her to check in at the airport, stand in a security line, and sit on an airplane with strangers surrounding her for many hours.  Tr. 600, 602, 607-08.  The ALJ also noted that Plaintiff obtained a 3.3 grade point average from online college classes and was a single parent to two teenage children, including one who was dealing with legal and substance abuse issues during the relevant period.  Tr. 610.  The ALJ reasonably concluded that the record documented activities that were inconsistent with Mr. Conley's opinion that Plaintiff was unable to work at

all due in part to her depression, panic disorder, and borderline personality disorder. This was a germane reason to discredit Mr. Conley's opinion.

### d. Based on Self-Reports

The ALJ also concluded that Mr. Conley's opinion appeared to rely heavily on Plaintiff's self-reports of severe depression, anxiety, and suicidal ideation. Tr. 610. A physician's opinion may be rejected if it based on a claimant's properly discounted complaints. *Tonapetyan*, 242 F.3d at 1149; *Morgan*, 169 F.3d at 602; *Fair*, 885 F.2d at 604. However, when an opinion is not more heavily based on a patient's discounted self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion. *Ghanim*, 763 F.3d at 1162; *Ryan*, 528 F.3d at 1199-1200. As discussed *supra*, Plaintiff's symptom complaints were properly discounted and Plaintiff failed to establish that the record evidence supported Mr. Conley's opinion that Plaintiff was unable to work due to her mental impairments. This was a germane reason to discredit Mr. Conley's opinion.

## C. Step Five

Plaintiff contends the ALJ's step five finding regarding Plaintiff's ability to perform work is not supported by substantial evidence because the testimony from the vocational expert was based on an improper hypothetical. ECF No. 14 at 19-20. The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record that reflects all of the claimant's limitations.

*Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). The hypothetical should

be "accurate, detailed, and supported by the medical record." *Tackett*, 180 F.3d at

1101. The ALJ is not bound to accept as true the restrictions presented in a

hypothetical question propounded by a claimant's counsel. *Magallanes*, 881 F.2d

at 756-57; *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1986). The ALJ is free

to accept or reject these restrictions as long as they are supported by substantial

evidence, even when there is conflicting medical evidence. *Id.* Plaintiff's

argument assumes the ALJ erred in evaluating the medical opinion evidence and

Plaintiff's symptom testimony. ECF No. 14 at 19-20. For reasons discussed

throughout this decision, the ALJ's hypothetical to the vocational expert was based

on the evidence and reasonably reflects Plaintiff's limitations. Thus, the ALJ's

findings are supported by substantial evidence and are legally sufficient.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the

ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly, **IT IS HEREBY ORDERED**:

    1. The District Court Executive is directed to **substitute Andrew M. Saul**

       **as the Defendant and update the docket sheet**.

    2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 15**, is

    **GRANTED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to

counsel, and **CLOSE THE FILE**.

DATED August 12, 2019.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE